Van Hoesen, J.
The complaint alleges that the plaintiff was employed by the defendant at a salary of five dollars per day to act as superintendent of the construction of a sewer in Seventieth street, and that he rendered services, in pursuance of such employment, for 208 days, so that he is entitled to $1,040.
The defendant denied the allegations of the complaint. The referee found in favor of the defendant, holding that the plaintiff was not employed by the defendant.
The plaintiff was the principal witness on his own behalf, and he testified to the employment as it is stated in the complaint. His brother, also, testified to the employment, and fully corroborated the plaintiff on that point.
The defendant positively denied that he ever employed the plaintiff, and insisted that he and the plaintiff were partners in the building of the sewer in Seventieth street. Jeremiah O’Sullivan, Robert J. Howe, James Clark and Joshua D. Miner, all testified to declarations of the plaintiff, that he and Vincent Clark were partners in this very *686 job. The plaintiff, on the rebuttal, denied that he ever made the statements that those witnesses imputed to him..
The credibility of Vincent Clark was successfully attacked by proof that in making application for the contract, he-swore to the truth of the matters contained in the estimate, and among those matters is this allegation: “I am the only person interested in this estimate; and no other person than herein named has any interest in this estimate, or in the contract proposed to be taken.”
If the testimony given by Vincent Clark on the trial be true, his oath to the estimate was wilfully false. If the defense rested solely upon the testimony of Vincent Clark, we should not sustain the decision of the referee. But there is a great deal of evidence in support of Clark’s testimony at the trial, and we can not say that the referee-erred in holding that the preponderance of proof was on the side of the defendant.
The testimony of O’Sullivan, Howe and James Clark is clear, consistent and credible. It consists, it is true, of declarations made by the plaintiff, and though proof of admissions is generally unsatisfactory testimony, yet they may be made under such circumstances as to carry conviction with them.
The testimony of those witnesses is supported by circumstances, and by the inherent probabilities of the case. For instance, it is conceded on all sides that the plaintiff and the defendant were partners in many contracts, and that they had been for some months in business together. James Clark, the father of Vincent, was a man of some-means. Healy was a contractor of experience, and had, as he said, influence with the department of public works. If Vincent Clark would become his partner, Healy could obtain money to carry on business from Vincent’s father, James Clark. These were the circumstances that led the plaintiff and the defendant to become partners. After the preliminaries had been arranged, Healy bid for some contracts, and Vincent bid for others, but the contracts that-either obtained were worked for the benefit of both as-partners. _ The estimate for the Seventieth street sewer, though signed by Vincent, was drawn by Healy; and though there is no excuse for Vincent’s false oath that he-alone was interested in it, it is not creditable to Healy that he prepared the estimate to which Clark attached an, untrue verification.
_ It may be said that Healy was not interested in this particular contract, but the case shows that he was interested-in several other contracts, that were awarded upon estimates drawn by Healy, and falsely sworn to by Clark.
It is significant that the estimate for this contract was- *687 drawn by Healy. He and Clark were partners in other contracts; why should this contract have been an exception ? They were partners; why should Healy permit Clark to exclude him from this part of the business ?
There is one difference between this contract and the others; this contract proved to be unprofitable, and a loss of more than $3,000 resulted. If Healy were not interested in this contract, he would not be hable for one-half of that loss; and if he were the superintendent, he would be entitled to more than a thousand dollars as wages.
Again. It is strange that Clark should have employed Healy as superintendent of the Seventieth street sewer, at a salary, when he knew that the latter had other business that required his presence elsewhere. Healy said: “I was not there every day. I do not know positively how many days I was there. It took 208 working days to finish the work. . I was engaged elsewhere from October 10th till June, 1883, looking after some work Clark and I were following up.” “We would carry on different pieces of work simultaneously.. I went and looked after different places while this work was in progress.”
It seems improbable that though a partner in the other contracts, he should have been superintendent of the Seventieth street sewer, and permitted to draw a salary as superintendent whilst his time was occupied in looking after the partnership affairs in other localities.
The witness O’Sullivan, swore that in December, 1882, Healy said to him: “ I have as much interest in Seventieth street as Vincent has; there is money in it, and I will see that I get my share.”
The witness- Howe, swore that after January 1, 1883, Healy said to him: “I have been freezing myself here all winter over this Seventieth street job, and we shall lose money on it. We have made money previous to this, but. on this job we shall lose it all, and more.”
The witness James Clark swore that prehminarily to the formation of thé partnership Healy said to him: “You furnish the money and I wifi be equal partner with yours, on Vincent. I have a great deal of influence, and can get a great deal of extra work.” Respecting the “Seventieth street sewer, Healy said, “ come to see the work.” I went, after they got the job. He said, “it was a nice winter’s job, and they would make a $1,000 a piece out of it.”
On the other hand, the witness Noonan decidedly corroborated the plaintiff.
It was evident that this was a case the decision of which depended upon the credit that the referee gave to the witnesses. The question involved was merely one of fact. It is manifestly impossible for this court to say that the *688 referee did not correctly weigh the witnesses. The story that he believed is not at all incredible.
The court of appeals, in Westerlo v. DeWitt (36 N. Y., 345), said: “ The question is not whether we should have found the same facts in the same manner. It is rather, are we so certain that the referee was in error upon the facts "that we will assume to reverse his judgment ? If the case is doubtful, his conclusion should not be reversed. If, upon reading the evidence, this court should be of the opinion that the conclusion might well have been either way, then the fact that the referee saw the witnesses, heard them testify, and had the nameless opportunities of judging their character that personal acquaintance only can give, should induce us to defer to his judgment. If, on the other hand, we are clearly of opinion that he erred in deciding the facts, we are bound to reverse his judgment.”
What estimate of the credibility of the witnesses this court would form if they had testified before us, we cannot say, but from careful reading of the case, it appears to us that the decision might have been either way.
It follows that the judgment cannot be reversed upon the facts. See also Stanwood v. Tyson, 10 N. Y. State Rep., 869.
Evidence that the relation between the parties was that of partners, and not that of employer and employed, was admissible under the general denial. It did not admit that the plaintiff had a cause of action to which a partnership would be an affirmative defense; it merely tended to show that there was no truth in the allegation of the complaint that the plaintiff was hired as superintendent.
The judgment should be affirmed, with costs.
Daly and Larremore, JJ., concur.